UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br>JOSE FREDDY ALVAREZ,<br><br>    Defendant. | Crim. No. 12CR0306-JAH<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**<br>**[DOC. # 7]** |

## INTRODUCTION

Currently pending before this Court is the motion to suppress filed by Defendant Jose Freddy Alvarez ("Defendant") to suppress the statement he made to law enforcement officers after his arrest. Defendant's motion has been fully briefed by the parties. After a thorough review of the pleadings, the relevant exhibits, and the oral argument of counsel at the hearing, this Court hereby **DENIES** Defendant's motion to suppress his statement.

## BACKGROUND

**I. Procedural Background**

On January 25, 2012, Defendant was charged in a one count indictment for knowingly and intentionally importing 500mg or more of a controlled substance into the United States, 21 U.S.C. §§ 952, 960. See Doc. #1.

On January 30, 2012, Defendant brought a motion to suppress the statement he made to law enforcement officers after his arrest on December 9, 2011. See Doc. #7. On February 6, 2012, the government filed its opposition. See Doc. #9. A hearing was held on February

15, 2012.

**II.     Factual Background**

On December 9, 2011, around 7:30 p.m., Defendant drove a pickup truck to the San Ysidro Port of Entry. After a narcotics detector dog alerted on his truck, Defendant and his truck were directed to the secondary inspection area where a United States Customs and Border Protection officer discovered a foil covered object in the truck's manifold. Around 9:30 p.m., officers recovered ten packages concealed in the manifold. The packages contained 3.14 kilograms of methamphetamine. Around 12 a.m., Homeland Security Investigation Agents Jeffrey Collins and Jeffrey Roberts informed Defendant he was under arrest for importation of methamphetamine. Defendant was interviewed in an interrogation room at the San Ysidro Port of Entry security office.

Defendant's post-arrest interview with Agents Collins and Roberts was recorded on DVD and provided to this Court. See Ex. A: Post-Arrest Interview of Jose Freddy Alvarez. The DVD showed that Special Agent Collins recited to Defendant his Miranda rights from the "Statement of Rights." Id. Defendant did not ask any questions of the first five rights as they were recited to him, but indicated that he did not understand the last of the rights, which states "If you decide to answer questions now, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting an attorney." See Ex. A, B. Agent Collins responded by explaining "if you want to talk to us, answer our questions now, and then decide later on that you want to stop, you don't want to answer our questions anymore or you want the attorney with you, all you have to do is say so and we'll stop, right then and there." See Ex. A. Defendant then placed his initials next to the right, as he had with the preceding five rights, indicating he received the advisement and understood it. See Ex. A, B. Additionally, Defendant signed the Miranda waiver, indicating that he was advised of all of his Miranda rights, understood them, and waived them freely and voluntarily. Id.

At various points in the interview, the agents accused Defendant of lying. See Ex. A. They also promised "to write a report to make [Defendant] look good in front of the judge," if Defendant would cooperate. Id. After Defendant denied his knowledge of the

methamphetamine, Agent Collins advised Defendant: "I will be writing a report tonight to the judge. I can either write you lied and did not tell the truth; or I can write you took responsibility and told the truth." Id. The agents then questioned Defendant about his ownership and possession of the pickup truck, to which Defendant replied that the truck remained in his possession after it was purchased. Id. Agent Collins confronted Defendant, saying: "You are not being honest ... Drugs don't just appear in a car ..." Id. Agent Roberts also joined in and said: "You are lying to us. You are not going to walk out. You are going to jail. This is your first chance to make a good impression to the judge." Id.

Fifteen minutes into the interview, Defendant asked the agents: "How will you help me?" Id. To which Agent Roberts replied: "... we can't make you promises about what the judge is going to do ... there is a very simple explanation about who this stuff belongs to and where its going and we need for you to tell us that, so we can put it in the report. Otherwise, it looks like you're the drug trafficker ..." Id. Agent Collins added: "You are going to jail for these people ..." Id. The agents continued to tell Defendant that they would "write him a good report to the judge" if he would cooperate. Id. Defendant asked and the agents permitted Defendant to call home. Id. Defendant paused to think after calling home, and he began to make inculpatory statements. Id. The interview continued for another half an hour, during which time the agents continued to request Defendant's cooperation and promise to "write a report that is good for [him]." Id. Defendant responded to the Agents' requests by pausing to think and making more inculpatory statements. Id. The entire interview was about an hour in duration.

## DISCUSSION

Defendant argues that his inculpatory statements are inadmissible because, under the totality of the circumstances, the agents' "powerful statements and pressure tactics rendered his statements involuntary." See Doc. #7 at 7. Defendant contends (a) that the Miranda advisement he received was rough and cursory, (b) that the agents repeatedly accused him of lying and/or being untruthful and threatened to give to the judge a report stating that he lied, and (c) that the agents promised to write a good report for him if he cooperated and asserted

that it was to his benefit to cooperate with them.  Id.

I.	**Legal Standards**

	a.	**Evidentiary Hearing On a Motion to Suppress**

An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist.  United States v. Howell, 231 F.3d 615, 620 (9th Cir.2000).  A hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one.  Id. at 621.  Rather, the defendant must demonstrate that a "significant, disputed factual issue" exists such that a hearing is required.  Id.

"Whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court."  United States v. Walczak, 783 F.2d 852, 857 (9th Cir.1986).  A defendant may forfeit his right to a hearing by not properly submitting a declaration pursuant to a court local rule.  U.S. v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991).

	b.	**Voluntariness of Confession**

"In criminal trials, in the courts of the United States, whenever a question arises whether a confession is incompetent because not voluntary, the issue is controlled by that portion of the Fifth Amendment ... commanding that no person 'shall be compelled in any criminal case to be a witness against himself.' "  Missouri v. Seibert, 542 U.S. 600, 607 (2004).  To reduce the risk of coerced confessions, "the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored."  Id.

A Miranda warning and a waiver are not dispositive on the issue of voluntariness.  Doody v. Schiro, 548 F.3d 847, 859 (9th Cir.2008).  In determining whether a confession was voluntary, a court must ask "whether a defendant's will was overborne by looking at the totality of all the surrounding circumstances."  Id. at 858.  The totality of the circumstances focuses both on the nature of the accused and the techniques used by the police officers to secure a confession.  Miller v. Fenton, 474 U.S. 104, 116 (1985).  Regarding the nature of the accused, the courts have considered the personal history of the accused, the level of his or her educational attainment, and his or her physical condition.  See Crane v. Kentucky, 476 U.S.

683, 691 (1986). Courts have also inquired into whether the defendant was under the influence of drugs. See United States v. Guaydacan, 470 F.2d 1173, 1173-74 (9th Cir. 1992).

As to the techniques used by law enforcement, the courts have looked at physical and psychological coercion such as beating and threatening the arrestee's life, e.g., United States v. Jenkins, 938 F.2d 934, 939-40 (9th Cir.1991), threatening to arrest a defendant's family, e.g., Rogers v. Richmond, 365 U.S. 534, 538, 541 (1961), and threatening to separate a defendant from her family, see United States v. Tingle, 658 F.2d 1332, 1336 (9th Cir. 1981) (statement was involuntary when made in response to threat that the defendant would not see her young child "for a while" because the maximum penalties for the offense were high.) The length and condition of interrogation are also relevant. See Reck v. Pate, 367 U.S. 433, 441-42 (1961) (defendant interrogated continuously over five days, deprived of food and medical treatment); Davis v. North Carolina, 384 U.S. 737, 743-47 (1966) (sixteen days of detention with limited diet and denial of access to telephone and vistors.)

While the police generally may offer to tell the prosecutor about the defendant's cooperation and suggest that cooperation may increase the likelihood of a more lenient sentence, United States v. Willard, 919 F.2d 606, 608 (9th Cir. 1990); United States v. Leon Guerrero, 847 F.2d 1363, 1365 (9th Cir. 1988), threatening to inform the prosecutor of a suspect's refusal to cooperate violates her fifth amendment right to remain silent. Guerrero, 847 F.2d at 1366; Tingle, 658 F.2d at 1336. Specifically, there are no circumstances in which law enforcement officers may suggest that a suspect's exercise of the right to remain silent may result in harsher treatment by a court or prosecutor. United States v. Harrison, 34 F.3d 886, 891-92 (9th Cir. 1994).

**c.    18 U.S.C. 3501(b)**

Title 18 United States Code Section 3501(b) sets forth five factors which a court must review to determine whether a statement is voluntarily made. These factors include: (1) the time elapsing between arrest and arraignment of the defendant, (2) whether the defendant knew the nature of the offense with which he was charged at the time of making the confession,(3) whether the defendant was aware that he was not required to make any

statement and that any such statement could be used against him, (4) whether the defendant had been advised of his right to counsel; and (5) whether counsel was present at the time of defendant's confession. 18 U.S.C. 3501(b); U.S. v. Shi, 525 F.3d 709, 730 (9thCir. 2008). No one factor is necessarily conclusive on the issue of voluntariness of a confession. Id.

## II. Analysis

### a. Evidentiary Hearing on a Motion to Suppress

Defendant contends that an evidentiary hearing is necessary for the Court to adequately consider all the circumstances and factors in determining the voluntariness of his statement. See Doc. #7 at 11. This Court declines to hold an evidentiary hearing because Defendant's post-arrest interview was recorded on a DVD and made available to this Court. Having reviewed the DVD, this Court finds it covers the entirety of the interview and the complained of conduct by government agents. This Court also finds that, rather than holding an evidentiary hearing, its decision is best informed of all the facts and circumstances on the issue of voluntariness through reviewing the DVD. The DVD permits the Court to observe first hand the nature and tenor of the interview, including the alleged improprieties by government agents, the defendant's demeanor and reactions to questions, and the credibility of the participants. Moreover, the Defendant did not offer to present any additional evidence. The request for an evidentiary hearing is denied.

### b. Miranda Advisement

Defendant contends that the Miranda advisement he received was rough and cursory. See Doc. #7 at 7. This Court finds that the agents adequately advised Defendant of his Miranda rights at the beginning of the interview. Defendant admitted on its own motion that:

> "Agent Collins read the 'Statement of Rights' to [Defendant], pausing briefly between each recited right to confirm that [Defendant] understood the right and if he did, further directing and/or waiting for [Defendant] to place his initials on the 'Statement of Rights' form next to the corresponding right."

See Doc. #7 at 2. Responding to Defendant's assertion that he did not understand his right to terminate the interview at any time, Agent Collins explained to Defendant that even if he chose to answer questions initially, he retained the right to stop the interview at any time. See id. Indicating he understood the explanation, Defendant put his initials next to the

corresponding right on the Statement of Rights. See id. Defendant did not raise any other questions concerning his rights as they were recited to him. There is no evidence to suggest Defendant was threatened by the agents or had trouble communicating with the agents. Defendant appeared to understand his rights, he put his initials next to each right, he signed the waiver voluntarily, and he talked to the agents freely.

### c. Accusing Defendant of Lying

Defendant contends that the agents overborne his free will when they repeatedly accused him of lying and/or being untruthful. See Doc. #7 at 7. This Court finds that it is not improper for the agents to tell Defendant that the agents knew he was lying. A suspect has no constitutional right to lie to police officers, unlike the constitutional right of a suspect to remain silent. See Harrison, 34 F.3d at 891. Defendant cited no case which has held that accusation of lying itself renders the defendant's subsequent confession involuntary under the Fifth Amendment and Due Process Clause.

### d. Suggesting Benefits of Cooperation

Defendant contends that his statement was obtained by "browbeating pressure tactics" held to be impermissible in Tingle. See Doc. #7 at 9. Tingle is clearly distinguishable. In Tingle, the interrogating agent accused Tingle of lying and stated that he would inform the prosecutor if Tingle were to cooperate, or would inform the prosecutor that she was "stubborn or hard-headed" if she refused. Tingle, 658 F.2d at 1334. Having determined that Tingle was the mother of a two-year old child, the agent recited to Tingle the maximum punishment of the crimes she might be convicted of, totaling over forty years of imprisonment, and told Tingle that she would not see her child for a while. Id. The agent's words were intended "to cause Tingle to fear that she would not see her child for a long period if she did not cooperate." Id. During the interrogation, "Tingle began to sob. She was noticeably shaking. She continued to cry for at least ten minutes." Id.

Similarly, in Harrison, the court found the defendant's confession involuntary when the police officer informed her that she was facing up to twenty years of imprisonment and asked her whether she thought it would be better if her sentencing judge were told that she had

cooperated with police or that she had not cooperated, at which point she confessed. Harrison, 34 F.3d at 890.

In this instant case, the agents explicitly stated they "could not make any promises" of benefits, but they would "write a report" stating Defendant "told the truth and took responsibility," if Defendant cooperated. It is not improper for the agents to suggest that they would "write a good report to the judge" or help Defendant "make a good impression" to a judge. See id. at 891 (a police officer's general statement that there would be advantages to cooperating and that a defendant's cooperation would be made known to the prosecutor or court has been held proper). This case is clearly distinguishable from Tingle and Harrison, where the agents, in addition to suggesting benefits of cooperation, also emphasized the maximum sentences the defendants were facing. See Harrison, 34 F.3d at 890; Tingle, 658 F.2d at 1334.

In addition, there is no evidence that Defendant had a particularly vulnerable physical condition or mental state. The entire interview was about one hour in duration and ended around 1 a.m. There is no evidence that Defendant was unreasonably deprived of food or sleep. Defendant claimed that he was not under the influence of drugs. See Ex. A. Defendant did not present in a manner to suggest his age, intelligence, or education made him susceptible to coercion. Defendant also did not show how his lack of prior experience with the criminal justice system demonstrated coercion. The agents allowed Defendant to call home when Defendant expressed concern for his family's safety, unlike the agent who preyed on Tingle's maternal instinct and caused her to fear that "she would not see her young child for a long time" if she failed to cooperate. See Tingle, 658 F.2d at 1336. Furthermore, Defendant appeared calm, unlike Tingle, who was noticeably shaking and continued to cry for at least ten minutes during the interview. See id. at 1334.

**e.    18 U.S.C. § 3501(b)**

With respect to § 3501(b), four of the five statutory factors weigh in favor of finding Defendant's statement voluntary. First, Defendant did not complain of an unreasonable delay in time between his arrest and arraignment. Second, Defendant was informed by the agents

of the nature of his crime at the beginning of the interview.  See Ex. A.  Third, as discussed above, the agents adequately advised Defendant of his Miranda rights, including necessarily the right to remain silent; and, fourth, the right to the presence of counsel during the interview.  Fifth, no attorney was present when Defendant gave his statement to the agents, but there is no evidence that any of the statements were extracted by use of threat, violence, or psychological pressure.  Accordingly, this Court finds that Defendant's waiver of his Miranda rights was knowing, intelligent, and voluntary.  This Court further finds that, under the totality of the circumstances, Defendant's confession was voluntary.

## **CONCLUSION AND ORDER**

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Defendant's request for an evidentiary hearing [doc. #7] is **DENIED**.
2. Defendant's motion to suppress his statement [doc. #7] is **DENIED**.

Dated: March 16, 2012

JOHN A. HOUSTON
United States District Judge

cc: All Counsel of Record